UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X

TACQWANA BURCH, AS ADMINISTRATRIX OF THE
ESTATE OF STANLEY STREETER,

Plaintiff,

-against-

11 CV 2841
(CBA) (VMS)

CITY OF NEW YORK, ROBERT URIBE, Individually,
CHRISTOPHE LOFFREDO, Individually, JOSEPH TORRES,
Individually, ANDREW LIPARI, Individually, CHUNGKONG
IP, Individually, MICHELLE ORTIZ, Individually, SYLVIA
ZUKOWSKI, Individually, MICHAEL MCAVOY, Individually,
STEPHEN SPATARO, Individually, SEAN SMITH, Individually,
JESSI D'AMBROSIO, Individually, ROBERT AMATY,
Individually, and JOHN and JANE DOE 1 through 10, Individually
(the names John and Jane Doe being fictitious, as the true names are
presently unknown),

Defendants.

------------------------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**BRETT H. KLEIN, ESQ., PLLC**
Attorneys for the Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..................................................................................................iii

INTRODUCTION..............................................................................................................1

STANDARD FOR SUMMARY JUDGMENT....................................................................3

STATEMENT OF FACTS..................................................................................................4

ARGUMENT.....................................................................................................................8

I.      Plaintiff's Federal Claims......................................................................................8

        A.      Plaintiff's claim of excessive force..........................................................8

                1.      Mr. Streeter's status as an emotionally disturbed person does not
                        Warrant the use of excessive force..............................................10

                2.      The level of force used to seize Mr. Streeter was not reasonable.................12

                3.      Plaintiff's claim that the force used by police officers caused
                        Mr. Streeter's death...................................................................15

        B.      Plaintiff's deliberate indifference to serious medical needs and safety
              claim........................................................................................................17

        C.      The defendant officers are not entitled to qualified immunity....................21

        D.      Plaintiff's loss of companionship claim....................................................22

        E.      All of the defendants had some degree of involvement in the assault and
              battery and use of excessive force on the decedent, Stanley Streeter........22

        F.      Plaintiff's failure to intervene claim.........................................................24

        G.      Plaintiff's supervisory liability claim........................................................26

        H.      Plaintiff's claim against the City for municipal liability.............................27

II.     Plaintiff's State Law Claims.................................................................................32

        A.      Defendants' violation of New York State's wrongful death statute...........32

B.     Plaintiff's State Law claims against the individual defendant officers.....................34

C.     The assault and battery claims.......................................................................................35

D.     Plaintiff's claim for intentional infliction of emotional distress.................................36

E.     Plaintiff's claims for negligent screening, hiring and retention and negligent training and supervision....................................................................................36

F.     Plaintiff's claims of violation of New York State Constitution Article 1 §11...........................................................................................................36

G.     Plaintiff's survival claim….......................................................................................36

H.     The City of New York is not protected by governmental immunity.........................37

I.     The exercise of supplemental jurisdiction over state law claims..............................37

CONCLUSION.................................................................................................................38

**TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page**

Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)...................................................24

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986)......................................4

Breitkopf v. Gentile, 41 F.Supp.3d 220, 242 (E.D.N.Y., 2014)......................................10

Cady v. Sheehan, 467 F.3d 1057, 1060 (7th Cir. 2006)................................................3

Carpenter v. City of New York, 984 F.Supp. 2d 255 (S.D.N.Y. 2013)..............................26

City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989).............................................27

Crockett v. The City of New York, 11-CV-48378 (PKC) (E.D.N.Y. Sept. 29, 2015).............24

Davis v. City of New York, 959 F. Supp. 2d 324, 337-38 (S.D.N.Y. 2013).........................27

Estate of William E. Williams v. Indiana State Police Department,
2015 U.S. App. LEXIS 14224.........................................................................21

Figueroa v. Mazza, Docket No. 11-CV-3160, 2014 U.S.Dist. LEXIS 139212,
at 14-15 (E.D.N.Y., Sept. 30, 2014)..................................................................24

First Merit Bank NA v. 220 North Ashland LLC, 2014 U.S.Dist. LEXIS 159741...................3

Goodwin v. Pretorius, 105 A.D.3d 207 (Sup. Ct. 2013)................................................34

Gonzalez v. NYCHA, 77 NY2d 663 (1991)........................................................22, 36

Graham v. Conner, 490 U.S. 386 (1989)...............................................................8

Grullon v. City of New Haven, 720 F.3d 133 (2d Cir. 2013)...........................................27

In re Anthony M., 63 N.Y.2d 270 (1984)................................................................16

Laster v. Mancini, 07 CV 8265, 2013 WL 5405468 (S.D.N.Y. Sept. 25, 2013)....................22

Marion v. City of Corydon, Indiana, 559 F.3d 700 (7th Cir. 2009)..................................16

Muhammed v. City of Chicago, 316 F.3d 680, 683 (7th Cir., 2002)……………………………..…16

Munger v. City of Glasgow, 227 F.3d 1082 (9th Cir. 2000)……………………………………………30

Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir., 2001)…………………………………….22

Scott v. City of New Rochelle, N.Y.S.2d 819 (Sup. Ct. 2014)……………………………………….34

Smith v. City of New York, 2015 U.S.Dist. LEXIS 102669 (N.Y.S.D., 2015)…………….11, 14, 15

Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240, 2004 WL 2202564, (S.D.N.Y. Sept. 28, 2004)……………………………………………………………………………………………..24, 22

Speights v. City of New York, No. 98-CV-4635 (NG) (JMA),
2001 U.S.Dist. LEXIS 10433, 19 (E.D.N.Y., June 18, 2001)……………………………………..24

Tennessee v. Garner, 471 U.S.1, 11-12 (1985)……………………………………………………14

Tilley v. Hudson River R.R., Co., 29 N.Y. 252 (1864)……………………………………….22, 36

Weinmann v. McClone, 787 F.3d 444 (7th Cir. 2015)……………………………………….........21

**Statutes**

42 U.S.C. §§1981, 1983 and 1988………………………………………………………………..1,22

New York State Constitution Article 1 §11…………………………………………………….29

New York State Mental Hygiene Law Section 9.41………………………………………….10, 35

**Rules**

Federal Rule 56.1………………………………………………………………………………..3

FRCP 56(c)……………………………………………………………………………………4

**Treatises**

1995 National Law Enforcement Technology Report…………………………………………..24

NYPD Police Patrol Guide, Section 216-05 1(c)(1),(2) (eff. Sept 28, 2007);
Section 203-11, paragraph 6, NYC 398; 6, NYC 399…………………………………12, 14, 26

Virginia Search and Seizure Manual for Law Enforcement Officers, 5th Edition,
Lexis Nexis Company……………………………………………………………………27-28

v

## INTRODUCTION

Plaintiff, Tacqwana Burch, as Administratrix of the Estate of Stanley Streeter, brings this action against the City of New York, as well as fourteen individually named officers of the New York City Police Department, pursuant to 42 U.S.C. §§1981, 1983 and 1988, for violation of the decedent's civil rights as secured by said statutes and the Constitutions of both the United States and the State of New York. Plaintiff claims that the defendants used excessive force in seizing the decedent, causing serious physical injury, emotional distress, and ultimately bringing about the death of Stanley Streeter. Additionally, the plaintiff claims that the defendants were deliberately indifferent to the decedent's obvious physical distress when he was face down and handcuffed for approximately 30 minutes in violation of among other standards, the NYPD Patrol Guide, and while he required immediate medical attention and thereby, through both their actions in assaulting the decedent, in keeping him in a face down position for 30 minutes with compression on his back and neck, and in failing to timely obtain medical treatment, brought about the death of Mr. Streeter.

Plaintiff's expert forensic pathologist, Lone Thanning, M.D., has concluded that that the physiological signs on Mr. Streeter's body support her determination that the defendants' use of brute unnecessary force was the cause of death. She noted that the right sterno-hyoid neck muscle hemorrhage injury that Mr. Streeter sustained required hyperextension and/or rotation, twisting, and compression of the front of the neck near the midline. Additionally, she concluded that a diffuse purple contusion at the right back of his neck was a pressure mark, inappropriate in location for an arrest situation with handcuffing and leg and shoulder holding only. Also, she concluded that Streeter's thoracic intervertebral disc hemorrhage was consistent with a pressure

1

injury indicating heavy weight pressure applied to Mr. Streeter's back while in a prone position. She further concluded that the multiple bilateral forehead, left nostril, and lower lip abrasions with extensive dirt contamination to the face and inside the mouth, as well as the newly chipped medial left upper incisor tooth, indicated firm pressure while prone with face pointing into the ground. Additionally, in her supplemental report, she specifically stated that autopsy-documented neck bruises indicated hyperextension of the neck, further compressing Mr. Streeter's airway and contributing to his tragic and untimely demise.

The defendants base their motion for summary judgment upon excerpted testimony of defendant officers and cherry-picked testimony of EMT's Bannon and Anzalone in an attempt to establish that any force used by the defendants was acceptable and sanctioned under the Fourth Amendment of the United States Constitution. The defendants claim that in the instant matter, summary judgment should be granted in favor of the defendants because there are no genuine issues of material fact which warrant a trial. However, the testimony of Shirley Liverman, annexed to defendants' affidavit in support of the motion as Exhibit "W," clearly sets forth that at the time that the police officers arrived on the scene and set upon the decedent, he was lying on the ground on his side, and that at no time prior to the defendant officers turning him over and putting him on a gurney only after the arrival of NYPD Emergency Services Unit ("ESU") officers at 6:42, some thirty minutes later, did he get up from the face down, rear handcuffed position. Plt.'s 56.1 ¶ 5-9. The testimony of Shirley Liverman clearly establishes a genuine, fundamental, material fact which necessitates the denial of defendants' motion for summary judgment. In addition, the deposition testimony of EMT Anzalone, not to mention the undisputed trauma to Streeter's face and body, clearly disputes the defendants' contention that

2

the decedent was somehow in good physical condition at the end of his encounter with the

police. EMT Anzalone expressly stated that at the time that the police turned over Mr. Streeter

to put him on the gurney and his vitals were checked at 6:45 a.m., he was already in cardiac

arrest and could have been for at least twenty minutes, constituting a full two-thirds of the time

that police officers were subduing him after he had already been handcuffed. Id. at ¶ 10.

It is respectfully submitted that pursuant to First Merit Bank NA v. 220 North Ashland

LLC, 2014 U.S.Dist. LEXIS 159741, the Court should not even consider this motion for

summary judgment as the defendants did not properly comply with the Local Civil Rule 56.1

requirements of a statement of uncontested facts. The defendants' purported statement is replete

with contradictory assertions and opinions that are not appropriate for such a statement. As an

example, the defendants cannot set forth in several enumerated paragraphs that the officers

involved testified that no one ever had their knee on the decedent's neck or back, then in other

enumerated paragraphs assert that the non-party witnesses, Shirley and Marvin Liverman,

observed two police officers in precisely that position and claim that the allegations constitute

uncontested facts. Plt.'s 56.1 ¶ 6-7. "The purpose of the Local Rule 56.1 Statement of Facts is

to identify the relevant evidence supporting material facts that the moving party contends are

undisputed, not to make factual or legal argument." Cady v. Sheehan, 467 F.3d 1057, 1060 (7th

Cir. 2006).

## STANDARD FOR SUMMARY JUDGMENT

As conceded by the defendants, the Court is obligated to view the evidence in the light

most favorable to the non-movant and must draw all reasonable inferences in his favor.

Summary judgment can only be granted if all of the submissions of the parties "show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c); <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 251-252 (1986).  It is respectfully submitted that especially if a court views the evidence in a light most favorable to the plaintiff, that the record taken as a whole could definitely lead a rational trier of fact to find that there are genuine issues for trial.

## STATEMENT OF FACTS

On March 16, 2010, Mr. Streeter was transported by ambulance to Richmond University Medical Center because he was allegedly acting erratically.  Defs.' 56.1 ¶¶ 60, 62, 72.  At approximately 2:30 a.m., Mr. Streeter was seen by Dr. Nidhi Varughese in the Emergency Room and said physician determined that Mr. Streeter was medically stable but required a psychiatric evaluation.  <u>Id.</u> at ¶¶ 72-73.  At approximately 4:15 a.m., Mr. Streeter was transferred to Bayley Seton, which is another location maintained by Richmond University Medical Center, which houses its Psychiatric Care Department.  <u>Id.</u> at ¶ 78.  Two Emergency Medical Technicians, Daniel Anzalone and Peter Bannon, were assigned the task of transporting Mr. Streeter to Bayley Seton Hospital from Richmond University Medical Center.  <u>Id.</u> at ¶¶ 79-82.

At approximately 5:45 a.m., EMT's Anzalone and Bannon were summoned back to Bayley Seton Hospital to transport Mr. Streeter.  <u>Id.</u> at ¶ 89.  At some point, while *en route* back to Richmond University Medical Center, the ambulance ended up stopped across the street from 101 Cebra Avenue with the back doors to the ambulance ajar, a gurney hanging half in and half out of the ambulance and Mr. Streeter outside said ambulance.  Plt.'s 56.1 ¶ 2.  There are conflicting accounts as to Mr. Streeter's actions during the period of time that he was outside the ambulance.  The defendants and the Emergency Medical Technicians testified that Mr. Streeter

4

was walking around, originally appearing to voluntarily re-enter the ambulance and then suddenly changed his mind. See e.g., Defs.' 56.1 ¶¶ 129, 133. The defendants assert that Mr. Streeter made motions indicative of an intent to rush through the officers in an attempt to get away and that he in fact made contact with one of the police officers. Id. at ¶¶ 137-140.

Contrary to the defendants' version of the facts, Shirley Liverman, an uninterested non-party witness, who did not know Mr. Streeter, any of his surviving family, or the police personnel involved in the incident, unequivocally stated that prior to the arrival of any police officers at the scene, Mr. Streeter was lying on the ground on his side near the curb by the property directly across the street from her home. Plt.'s 56.1 ¶¶ 1, 3. The police officers claimed that they had to take down Mr. Streeter forcefully because Mr. Streeter was struggling against them and one officer even characterized Mr. Streeter as struggling with great force and was freakishly strong. See e.g., Defs.' 56.1 ¶¶ 145-161. Shirley Liverman gives a totally different account, that the police officers, upon arrival at the scene, pounced upon Mr. Streeter, forcing him from the position in which he was lying on his side to a face-down position and forcefully pushing him into the ground with a female officer (matching the description of defendant Sylwia Zukowski) applying a knee to his neck and a male officer placing a knee in his back while forcing his shoulders down, all while Mr. Streeter's hands were at his back. Plt.'s 56.1 ¶¶ 6, 7.

Also presenting grave contradictions, the defendants cited excerpted testimony from the defendant officers, characterizing Mr. Streeter's conduct after the police officers had him handcuffed as struggling violently for the entire approximately half hour that the encounter took place, to a momentary struggle and then prolonged stillness and everything in between. See Defs.' 56.1 ¶¶ 186-188, 192. In contrast, EMT Bannon testified that Mr. Streeter appeared to

struggle against the handcuffs for approximately five minutes and then was still and quiet for the duration of the encounter with the police. Id. at ¶¶ 177, 231. EMT Anzalone testified that when the police finally got off of the decedent and turned him over, he was clearly in cardiac arrest and could have been so for at least twenty minutes. Plt.'s 56.1 ¶ 11. Drawing all inferences in favor of the plaintiff as the Court must, the only struggle, especially given the medical evidence, is that Mr. Streeter was struggling to breathe while he lay rear handcuffed in a prone position, with officers on top of and around him for approximately thirty minutes.

Also, another contradiction in the defendants' assertion of uncontested facts is that Mr. Streeter was in good physical condition when he was ultimately turned over and put on a gurney that was then loaded into the ambulance. While the defendants almost uniformly testified that Mr. Streeter was fine when he was placed in the ambulance, the testimony of Shirley Liverman, Marvin Liverman, and EMT Anzalone establish that oxygen was applied to Mr. Streeter immediately upon the police officers getting off of him and turning him over. Id. at ¶ 10. As previously stated, EMT Anzalone specifically determined that at the time that the police officers turned him over, he was already in cardiac arrest. Id. at ¶ 11.

The only uncontested facts in this action are that when Mr. Streeter was initially transported to Richmond University Medical Center and back and forth from Bayley Seton Hospital prior to the events in question, he was in essentially good medical condition with the exception of elevated blood pressure. Defs.' 56.1 ¶ 108. It is uncontroverted that beyond his psychological issues establishing him as a purported emotionally disturbed person, he was in good physical condition and had no marks on his body until the police officers happened upon him after he had alighted from the ambulance on Cebra Avenue. Plt.'s 56.1 ¶ 15. It is further

6

uncontested that immediately after Mr. Streeter's catastrophic encounter with the police, he had,

as the City's autopsy report concluded, "Blunt impact of the head with: face coated with

dirt/soil; dirt between teeth and in eyes; facial abrasions; abrasions and contusions of the lower

lip and broken left upper incisor; he had blunt impact of the neck with hemorrhage in the right

sternothyroid muscle and hemorrhage in the posterior neck subcutaneous tissue; and blunt impact

of the torso with skin abrasions; multiple subcutaneous contusions and hemorrhagic eleventh

thoracic intervertebral disk. Id. at ¶¶ 13-14, 16. In short, it is uncontroverted that Mr. Streeter

sustained multiple blunt impact injuries to the head, neck and torso while on the ground during

an encounter with police officers that continued for approximately thirty minutes consistent with,

inter alia, his face being pushed in the ground and knees being placed on his neck and back to

keep him down despite his passivity and lack of any resistance, or movement for that matter.

The Medical Examiner determined Mr. Streeter's death to be caused by hypertensive

cardiovascular disease brought on by accident (sudden cardiac death after violent struggle).

Defs.' 56.1 ¶ 332. It must be noted that notwithstanding that Dr. Varughese and the Medical

Examiner, Kristin Roman, M.D., were only given the police officers' account, the allegation that

Mr. Streeter was purportedly a combative EDP, neither of them suggested that any of the injuries

sustained were the result of Mr. Streeter's actions. The entry that the manner of death was

"sudden cardiac death after violent struggle," rather than dispute plaintiff's claims, supports

them. Id. at ¶ 332. There is no doubt that there was a violent struggle that caused extensive

injuries to Mr. Streeter, it is for a jury to determine whether the violence was one-sided by the

defendants upon the plaintiff or whether Mr. Streeter was in any way combative or put up any

struggle other than to breathe and fight for his life. At this stage, all inferences drawn in

7

plaintiff's favor point to the latter, and the defendants' motion must thus be denied.

## ARGUMENT

I.      **Plaintiff's Federal Claims.**

       A.      **Plaintiff's claim of excessive force.**

Claims for excessive force by police officers are analyzed under the Fourth Amendment and its reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Id. at 396 (internal quotations omitted). A proper application of the Fourth Amendment reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Id.

It is respectfully submitted that the testimony of Shirley Liverman, that she observed Mr. Streeter on the ground prior to the arrival of the police, clearly presents a genuine issue of material fact regarding whether any force at all would have been reasonable to handcuff Mr.

Streeter and take him into custody. Plt.'s 56.1 ¶ 4-5.  Shirley Liverman's testimony refutes the

defendants' contention that Mr. Streeter was combative, attempting to flee, or presented any risk

to himself or others.  Moreover, it is undisputed that Mr. Streeter had not committed any crime at

all.  Mrs. Liverman's testimony belies the defendants' assertion in their Memorandum of Law

that, "There is no admissible evidence to support plaintiff's theory that Mr. Streeter's death was

caused by any force applied by police officers."  Furthermore, the testimony of EMT Anzalone

concerning the fact that Mr. Streeter was in cardiac arrest, coupled with the Medical Examiner's

conclusion of sudden cardiac death after violent struggle clearly supports plaintiff's claim that

the death was caused by force applied by the police officers.  See Plt.'s 56.1 ¶ 10; Defs.' 56.1 ¶

332.

Finally, Dr. Thanning, a highly qualified forensic pathologist, will testify that the

physiological signs on Mr. Streeter's body support her determination as to cause of death arising

from the use of excessive force.  She noted in her report, annexed as Exhibit 2 to the Declaration

of Joshua Lax in Support of Defendants' Motion to Exclude Expert Testimony, that the right

sterno-hyoid neck muscle hemorrhage injury required hyperextension and/or rotation, twisting,

and compression of the front of the neck near the midline.  Additionally, she concluded that a

diffuse purple contusion at the right back of Streeter's neck was a pressure mark, inappropriate in

location for an arrest situation with handcuffing and leg and shoulder holding only.  Id.  Also,

she concluded that the thoracic intervertebral disc hemorrhage was consistent with a pressure

injury indicating heavy weight pressure applied to Mr. Streeter's back while in a prone position.

Id.  She further concluded that the multiple bilateral forehead, left nostril, and lower lip abrasions

with extensive dirt contamination to the face and inside the mouth, as well as the newly chipped

9

medial left upper incisor tooth indicated firm pressure while prone with face pointing into the

ground.  Id.  Additionally, in her supplemental report, she specifically stated that autopsy-

documented neck bruises indicated hyperextension of the neck, further compressing Mr.

Streeter's airway and contributing to his tragic and untimely demise.  Id.

    1.    **Mr. Streeter's status as an emotionally disturbed person does**
        **not warrant the use of excessive force.**

    The defendants cite to New York State Mental Hygiene Law Section 9.41, which states

that a "police officer . . . may take into custody any person who appears to be mentally ill and is

conducting himself in a manner which is likely to result in serious harm to himself or others."

The defendants concede that, "Under the statute, the likelihood of serious harm arises when there

is a substantial risk of physical harm to other persons as manifested by homicidal or other violent

behavior by which others are placed in reasonable fear of serious physical harm."  In the

defendants' purported Statement of Uncontested Facts, they expend a great amount of time

referring to Mr. Streeter's prior treatment at Richmond University Medical Center for a sole

previous psychiatric episode that is completely irrelevant and unrelated to the incident.  While

the prior episode is irrelevant insofar the defendant officers and the EMTs were not aware of Mr.

Streeter's history (or lack thereof), the one pertinent fact that can be drawn is that Mr. Streeter

never had any history of violence towards himself or anyone else.  Additionally, the defendants

set forth no basis for believing that Mr. Streeter was a threat to the public at large, to himself, or

to the police officers beyond a general statement that they were afraid that he might wander into

the middle of the street.  Even under the defendants' version of the facts, wherein they claimed

that Mr. Streeter was combative when they attempted to take him into custody, there is no claim

at all that Mr. Streeter manifested any homicidal or other violent behavior before his encounter

with the police.  Moreover, as discussed further below, plaintiff specifically disputes that Mr.

Streeter was combative when the officers first arrived.

It must be noted that plaintiff does not suggest that police personnel did not have

authority to seize Mr. Streeter for a psychiatric evaluation or to assist in transporting him to the

hospital because of the original concern, which was his highly elevated blood pressure.  Despite

this authority, the officers were still bound to exercise reasonable judgment in the means by

which they executed this task.  See Smith v. City of New York, 12 CV 4922, (NRB), 2015

U.S.Dist. LEXIS 102669 (SDNY 2015).  The crux of the plaintiff's claim here is that the police

officers acted unreasonably when they exerted force on Mr. Streeter because if one accepts

Shirley Liverman's account, Mr. Streeter was passive and on the ground at the time that the

police arrived on the scene.  Plt.'s 56.1 ¶ 4.  In addition, the police were aware that Mr. Streeter

was *en route* to the hospital prior to their being summoned and had a duty to inquire of the

EMT's what the nature of Mr. Streeter's condition was.  Defs.' 56.1 ¶ 102.  Per the EMT's,

defendant officers knew that Mr. Streeter was being transported to the hospital because of

hypertension and were on notice that a violent encounter with him could reasonably exacerbate

that condition, causing his death, the exact finding of the Medical Examiner.  Defendants have in

fact conceded in their 56.1 Statement that EMT Bannon told the defendant police officers about

the decedent's extremely elevated blood pressure and they knew he was an EDP.  Id. at 110, 113.

EMT Anzalone also informed the defendants that the decedent had high blood pressure and was

in need of immediate attention.  Defs.' Ex. H, p. 76.

Even if the police officers did not know and a jury were to determine that they had no

obligation to inquire as to what Mr. Streeter's condition was prior to their arrival on the scene, a

11

jury could find that the officers knew that Mr. Streeter was in the course of being transported to the hospital by ambulance for some medical condition such that a prolonged encounter that included holding him to the ground in a prone position while rear handcuffed before transporting him to the hospital for immediate medical attention, was unreasonable as this was in direct violation of the NYPD Patrol Guide, Section 203-11, which prohibits placing unnecessary pressure on subjects' chests, maintaining subjects who are handcuffed in a face down position, and otherwise engaging in more force than is necessary under the circumstances. See Klein Decl. Ex. 6.

2. **The level of force used to seize Mr. Streeter was not reasonable.**

The defendants' reliance upon general statements that not every push or shove, even if it may later seem unnecessary, violates the Fourth Amendment, requires the court to make an impermissible credibility determination that the account of the interested police officers regarding resistance occurred and discounting the testimony of Shirley Liverman that Mr. Streeter did not have to be violently subdued because he was already lying on the ground. The cases cited by the defendants specifically state that plaintiff's "resistance to arrest rendered defendants' limited use of force in this circumstance, which involved tackling plaintiff to the ground and restraining him until backup arrived, reasonable." However, the cases cited by the defendants also make clear that the use of even limited force is unreasonable if the person sought to be seized was not resisting. Whether resistance was occurring, and then whether the force applied for the 30 minutes or so until plaintiff was turned over only after the arrival of the NYPD Emergency Services Unit was reasonable, is a clear, genuine issue of fact.

It is further outrageous that the defendants argue that the injuries sustained by Mr.

12

Streeter were *de minimis*. First, it is clear that the manner in which force is applied is the issue, and unnecessary force resulting in minor injuries is actionable. Notwithstanding, injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing and two superficial scratches with a cut inside the mouth." In the instant action, those are clearly not the injuries asserted. The Medical Examiner concluded that there were blunt impact injuries to the head, neck and torso, including a broken tooth, and rather than merely sustaining short-term pain, Mr. Streeter died. Plt.'s 56.1 ¶ 16. The testimony of Marvin Liverman clearly established that while the police were on top of him, Mr. Streeter was, in rapid succession, gasping that he could not breathe. Id. at ¶ 9. The deposition testimony of EMT Anzalone established that during the encounter with the police, Mr. Streeter went into cardiac arrest. Id. at ¶ 11. Dr. Thanning, plaintiff's expert forensic pathologist, found that the right sterno-hyoid neck muscle hemorrhage injury required hyperextension and/or rotation, twisting, and compression of the front of the neck near the midline. Additionally, she concluded that a diffuse purple contusion at the right back of his neck was a pressure mark, inappropriate in location for an arrest situation with handcuffing and leg and shoulder holding only. Also, she concluded that the thoracic intervertebral disc hemorrhage is consistent with a pressure injury indicating heavy weight pressure applied to Mr. Streeter's back while in a prone position. She further concluded that the multiple bilateral forehead, left nostril, and lower lip abrasions with extensive dirt contamination to the face and inside the mouth, as well as the newly chipped medial left upper incisor tooth indicated firm pressure while prone with face pointing into the ground. Additionally, in her supplemental report, she specifically stated that autopsy-

13

documented neck bruises indicated hyperextension of the neck, further compressing Mr. Streeter's airway and contributing to his tragic and untimely demise.

These injuries do not mesh with the ones that the defendants have classified as *de minimis*.

Additionally, the NYPD Police Patrol Guide specifically sets forth procedures for the Use of Force, as well as the manner in which NYPD officers are to deal with so called emotionally disturbed persons. The Patrol Guide provides, in pertinent part, that the "primary duty of all members of the service is to preserve human life", and that "only that amount of force necessary to overcome resistance will be used to effect an arrest or take a mentally ill or emotionally disturbed person into custody." Klein Decl., Ex. 6 (Patrol Guide Section 203-11). It further states that police officers should "make every effort to avoid tactics, such as sitting or standing on a subject's chest, which may result in chest compression, thereby reducing the subject's ability to breathe." *Id.* It also mandates that "after an individual has been controlled and placed under custodial restraint using handcuffs and other authorized methods, the person should be positioned so as to promote free breathing. The subject should not be maintained in a face down position."

"Unless the person presents an immediate threat or is willing to leave voluntarily, the officer should 'attempt to isolate and contain the [person] while maintaining a zone of safety until arrival of patrol supervisor and Emergency Services Unit personnel' and should 'not attempt to take [the person] into custody without the specific direction of a supervisor.' Patrol Guide, Section 216-05 1(c)(1),(2) (eff. Sept 28, 2007). This 'zone of safety' is a buffer zone between the disturbed person and officers, usually of at least twenty feet." Smith, 2015 U.S.Dist.

LEXIS 102669.

In Smith, supra, the court acknowledged that the "Patrol Guide has frequently been accepted as evidence of the standard of care to be exercised by a police officer" and "evidence that the officers violated Patrol Guide procedures is sufficient to survive summary judgment." If the jury determines that a reasonable person would not have deemed Mr. Streeter to pose an immediate risk of serious injury to himself or the public, and/or that the determination to leave him in a face down position while rear handcuffed for 30 minutes was unnecessary, the violation of the Patrol Guide constitutes some evidence of wrongdoing on the part of the defendant police officers. Moreover, a jury could find that the decision to maintain Mr. Streeter in a face down position, while maintaining a knee in his back and in his neck, during the entirety of the detention, also in violation of the patrol guide, was in and of itself unreasonable regardless of Mr. Streeter's health condition or status as an EDP, such that summary judgment is inappropriate.

> 3.  **Plaintiff's claim that the force used by police officers caused Mr. Streeter's death.**

Defendants claim that, "It is undisputed that Mr. Streeter, who was having a psychotic episode, was attempted to be restrained by police officers and taken down to the ground and a struggle ensued." As previously stated, this fact is not undisputed. If a jury were to accept Shirley Liverman's testimony, especially in light of the fact that unlike the police officers, she is a wholly uninterested individual, it would have to conclude that Mr. Streeter did not resist and the extent of the violent struggle was the police officers applying force to Mr. Streeter while he was on the ground with his hands cuffed behind his back, face down on the ground, struggling to breath and fighting for his life while the defendant officers and their supervisor, Chen, waited

15

over 30 minutes for the ESU unit to arrive, even though Mr. Streeter was not moving, and an ambulance was on the scene.

Both EMTs Anzalone and Bannon testified that Mr. Streeter did not move at all after being turned over by the police and, as previously stated, EMT Anzalone expressly stated that Mr. Streeter was already in cardiac arrest when he was turned over by the police. Plt.'s 56.1 ¶ 11. Furthermore, Shirley Liverman, Marvin Liverman, and EMT Anzalone specifically state that immediately upon turning over Mr. Streeter, oxygen had to be applied. Id. at ¶ 10. As such, there is, at the very least, a question of fact as to whether Mr. Streeter was having a full-blown heart attack during the course of his encounter with the police.

In any event, even if the encounter with the police had ended prior to Mr. Streeter's death, that, in and of itself, would not mean that Mr. Streeter's death was not caused by his encounter with the police and the force that they exerted upon him. There are numerous cases that hold that a crime victim, who sustains a heart attack days after the incident and dies as a result, forms the basis for a homicide charge against the individual performing the criminal act, even if no physical contact occurred with the decedent. In re Anthony M., 63 N.Y.2d 270 (1984). In the instant action, even if a jury were to determine that Mr. Streeter was alive at the time that he was put in the ambulance, it could still determine that the actions of the police officers caused his death. In fact, plaintiff would submit that the autopsy report setting forth the manner of death precisely makes that claim.

The autopsy report, annexed to the Lax Decl. as Exhibit "D," specifically sets forth that the manner of death was cardiac arrest after violent struggle and that the manner of death was an accident. The expert reports of Dr. Lone Thanning, a forensic pathologist, and Police Chief

16

Timothy Longo, Sr., set forth the opinion that Mr. Streeter's death was caused by positional asphyxia, which conclusion is supported by the testimony of both Shirley Liverman and Marvin Liverman, in that they both swore that they observed police officers on top of the decedent, one with a knee positioned on his neck and another with a knee positioned on his back while forcing his shoulders into the ground. Plt.'s 56.1 ¶¶ 5-9. Additionally, all of the police officers concede that Mr. Streeter was restrained in a chest-down position while rear handcuffed for thirty minutes, while some of the officers were applying some degree of force to hold him down while the rest stood by. Moreover, the testimony of both EMT Bannon and EMT Anzalone, as well as admissions of the police set forth in the Richmond University Medical Center records (that Streeter was "face down" for ten minutes) set forth triable issues of fact that Mr. Streeter was held down in a face-down position after being handcuffed. Id. at ¶ 9. Under these circumstances, the inferences to be drawn in plaintiff's favor, to the extent that a jury may believe that Mr. Streeter was struggling on the ground after initially being handcuffed, is that any such struggling was not evidence of resistance, but rather indicative of Mr. Streeter's oxygen deprivation, causing him to struggle for air because of the manner in which he was being restrained.

> B.     **Plaintiff's deliberate indifference to serious medical needs and safety claim.**

The defendant police officers were aware that Mr. Streeter was suffering from hypertension. Defs.' 56.1 ¶ 113. In this regard, defendants concede in their 56.1 Statement that EMT Bannon told the defendant police officers about the decedent's extremely elevated blood pressure and they knew he was an EDP. Id. at 110, 113. EMT Anzalone also informed the defendants that the decedent had high blood pressure and was in need of immediate attention.

17

Defs.' Ex. H, p. 76.

Notwithstanding Dr. Varughese's medical opinion (which constitutes argument and not fact) that individuals can live long and healthy lives with no symptoms of extremely elevated blood pressure, it is clear that the hospital personnel thought the condition serious enough to warrant transporting Mr. Streeter back to the Emergency Room of Richmond University Medical Center without even first addressing the original reason for his hospitalization that morning.  To say that, "Obviously, Dr. Varughese believed Mr. Streeter's condition was not too serious if she medically cleared him and sent him for psychiatric consultation," is irrelevant, because at the time she cleared Mr. Streeter, he did not have elevated blood pressure.  See Defs.' Ex. "D," at NYC957 (stating that Mr. Streeter's BP was 122/65).  Moreover, it ignores that the fact that the doctor who was to perform the psychiatric consultation determined that he couldn't perform it and sent Mr. Streeter back to Richmond University Medical Center due to his medical condition. Defs.' 56.1 ¶ 89.  Again, not to belabor the point, EMT Anzalone expressly found that at the time that Mr. Streeter was turned over, he was already in cardiac arrest and could have been so for at least twenty minutes.  Plt.'s 56.1 ¶ 11.  This alone raises a question of fact as to whether the police officers, especially the ones that were on top of the plaintiff's decedent throughout the entire thirty-minute encounter, should have known that they had brought upon a heart attack, especially given their training and knowledge of Patrol Guide Section 203-11, and its clear prohibition of maintaining handcuffed persons in custody in a face down position and otherwise putting pressure on a subject's chest.  There is also sufficient testimony offered that contradicts the account of the defendants that Mr. Streeter was moving throughout the encounter.  For example, defendant Officer Ortiz testified that Mr. Streeter became quiet at some point, and

18

EMT Bannon testified that Mr. Streeter did not move or say a word for a least 20 minutes. Defendants' Ex. "Q," Ortiz Dep. at p. 100:19-21; Ex. "G" Bannon Dep. at pp. 170 and 190-192. EMT Bannon's testimony also supports EMT Anzalone's assertion with regard to cardiac arrest insofar as he testified that Mr. Streeter did not move for at least twenty minutes, and that the lack of movement and a blank stare are symptoms of cardiac arrest. Defs.' 56.1 ¶ 208.

Furthermore, the defendants' assertion that the EMT's checked Mr. Streeter's vitals and determined that he was fine is misleading and disputed. Both EMT's claim that they checked for a pulse shortly after Mr. Streeter was handcuffed and both testified that a pulse was noted. Neither asserted specifically what the pulse rate was measured at, and EMT Anzalone expressly stated that the police officers only wanted him to let them know if a pulse was detected. Also, whether or not EMT's Bannon and Anzalone even checked for Mr. Streeter's pulse or otherwise checked his vitals is a point of contention and a disputed fact, as set forth in plaintiff's Rule 56.1 Response. In particular, no such findings were recorded on the Ambulance Call Report prepared by EMT Anzalone, which expressly contradicts his and EMT Bannon's testimony with regard to monitoring the decedent's condition. The Ambulance Call Report indicates that Mr. Streeter's pulse was checked three times while the EMT's were on the scene, once at 5:50 a.m., again at 6:00 a.m., and finally at 6:45 a.m.—after the arrival of ESU when Mr. Streeter was removed from the prone rear handcuffed position for the first time since approximately 6:10 a.m—at which time no pulse was detected. See Klein Decl., Ex. 5. Additionally, the Sprint (e.g. police communications) report states that the police were not summoned until 6:05 a.m., which means that there is a question of fact as to whether Mr. Streeter's pulse or respiration were checked at all while the police were on the scene prior to 6:45, when it was determined that there was no

pulse and he was not breathing.  Defendants' Exhibit "K," 911 Sprint Report.

In any event, EMT Bannon expressly testified that the presence of a pulse does not rule out that someone is being asphyxiated or in cardiac arrest.  Plt.'s 56.1 ¶ 12.  The defendants' entire defense with regard to the claim for deliberate indifference to serious medical needs and safety again wholly relies on the court accepting the interested police officers' testimony that Mr. Streeter became combative and they were forced to take him to the ground.  As previously established through the testimony of Shirley Liverman, the police officers' account is contradicted and that contested material fact potentially alters the factual background against which police were determining the best course of action with regard to transporting Mr. Streeter to the hospital, as was the original plan.  If Mr. Streeter was non-combative and nonviolent, a jury could conclude that the decision to wait for ESU, consequently prolong the encounter with Mr. Streeter, postpone his obtaining treatment for his hypertensive condition, when all of the police officers conceded that it took an unusually long time for ESU to respond, was not reasonable under the circumstances.

Also, the claim of deliberate indifference to plaintiff's medical needs and safety is supported by evidence of the officers who stood around and permitted two of their colleagues to asphyxiate the plaintiff's decedent by positioning themselves with a knee on the decedent's neck and another one with a knee on the decedent's back while forcing his shoulders into the ground in a face-down position.  Plt.s' 56.1 ¶ 7.  Each of the defendants was subjectively aware from their training and knowledge of Patrol Guide 203-11 that such conduct could lead to death.  The defendants concede and the court must accept that Marvin Liverman, who was standing beyond the police, who were circled around Mr. Streeter while other police officers were holding him

20

down to the ground, hear Mr. Streeter utter excitedly in succession that he couldn't breathe. Id.

at ¶ 8.  A jury could reasonably determine that the other police officers, being closer than Marvin

Liverman, must have also heard Mr. Streeter and would have had an obligation to intervene, both

to stop their colleagues from exerting force on Mr. Streeter that was causing his inability to

breathe, to put him in a seating or standing position, and to otherwise seek necessary treatment

for his serious medical needs.

C.    **The defendant officers are not entitled to qualified immunity.**

In Estate of William E. Williams v. Indiana State Police Department, 2015 U.S. App.

LEXIS 14224, recently decided on August 13, 2015, the court held:

> "It is well established – … that 'a person has a right not to be seized through the
> use of deadly force unless he puts another person (including a police officer) in
> imminent danger or he is actively resisting arrest and the circumstances warrant
> that degree of force.' Weinmann, 787 F.3d at 448; Marion, 559 F.3d at 705;
> Muhammed v. City of Chicago, 316 F.3d 680, 683 (7th Cir., 2002); Tennessee v.
> Garner, 471 U.S.1, 11-12 (1985).  Accordingly, we have repeatedly recognized
> that officers could not use significant force on non-resisting or passively resisting
> suspects.

In the Blanchard decision, consolidated into the Williams appeal, the court found that

there was no qualified immunity for police officers because there was no indication that the

emotionally disturbed person posed a threat to others and the extent to which he posed a threat to

himself was not established by the record. Id.  The court found that at the time the police

arrived, there appeared to be no apparent, immediate danger. Id.

The court further referred to its prior decision in Weinmann, 787 F.3d 444, wherein it

held that a police officer responding to a call to assist with an emotionally disturbed person is not

entitled to qualified immunity where the facts do not suggest that the emotionally disturbed

person put another person in imminent danger or was actively resisting arrest warranting force.

21

The court held that the police officer was not entitled to qualified immunity if the force used is unreasonable to subdue a passively resisting individual who has not presented any threat of harm to others.

The defendants' defense of qualified immunity once again hinges on their assertion that it is uncontroverted that Mr. Streeter was combative and was resisting arrest. By now, it is well established that the defendants' proposition is contested and that such contradictory fact pattern is wholly based on admissible deposition testimony submitted by the defendants in support of their motion. Given that it is arguable that Mr. Streeter was wholly passive during the encounter and there was no violent resistance to his seizure, coupled with the horrific trauma evident on Streeter's face and body, a jury could determine that no reasonable police officer would believe that the use of any force, let alone the amount of force employed herein, was acceptable. Defendants' motion in this regard must thus be denied.

        **D.**      **Plaintiff's loss of companionship claim.**

In New York, loss of services and loss of companionship is compensable as an element of damages in both personal injury and wrongful death actions. See Tilley v. Hudson River R.R., Co., 29 N.Y. 252 (1864); Gonzalez v. NYCHA, 77 NY2d 663 (1991). The loss of companionship of a spouse or parent has been fully recognized as a pecuniary loss pursuant to New York State case law in the area of wrongful death. It is therefore irrelevant whether the plaintiff can maintain a separate cause of action for loss of companionship or recover for same as an element of damages in the personal injury and wrongful death action.

        **E.**      **All of the defendants had some degree of involvement in the assault and battery and use of excessive force on the decedent, Stanley Streeter.**

22

The defendants cite to <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 154 (2d Cir., 2001) for the proposition that, "Direct physical participation of the defendant in the constitutional violation is not alone a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal." Defendants then go on to assert that plaintiff's complaint fails to identify which officer defendant was involved in which violation of Mr. Streeter's rights and that thereby she has failed to meet her burden to show that each individual officer personally participated in any constitutional violations. Defendants argument ignores that "[a] police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." <u>See</u> <u>Laster v. Mancini</u>, 07 CV 8265, 2013 WL 5405468, *27 (S.D.N.Y. Sept. 25, 2013).

The testimony of Shirley Liverman clearly establishes that all of the police officers circled around Mr. Streeter while at least two of them were on top of Mr. Streeter and forcefully pushing him to the ground, one with a knee on his neck and another with a knee on his back. <u>See</u> e.g., defendants' Ex. W," S. Liverman Dep. at pp. 47-48, 50. Mrs. Liverman testified that it appeared that the police officers specifically circled around Mr. Streeter during the course of the confrontation to obstruct the view of anyone who might be watching. <u>Id.</u> at p. 50. Moreover, defendants Torres, D'Ambrosio, Lipari, McAvoy, Spataro, Smith, Ortiz, Uribe, Loffredo, Zukowski, and Ip all admitted to some form of physical contact with Mr. Streeter or to seeing the purported physical struggle occur, or being present while Mr. Streeter was on the ground. <u>See</u> e.g., Defs.' 56.1 ¶¶ 145, 147, 153, 161, 162, 166, 166, 170-174, 184; Klein Decl. Ex. 7, Ip. Dep. at pp. 89-94; Klein Decl. Ex. 8, Ast Dep., at pp. 89, 99-108. Further, defendant Chen admitted to

23

supervising what was happening and being present at the scene for at least 17 minutes, during some portion of which Mr. Streeter was restrained on the ground.  Klein Decl. Ex. 9, Chen Dep., at pp. 70-73, 97-102.  Similarly, his driver, defendant Amaty was also present at the scene with Chen and present while Mr. Streeter was held on the ground in a face down position while rear cuffed with officers on or around him while he struggled to breathe.  Klein Decl. Ex. 10, Amaty Dep., at pp. 87-88.  Viewing the evidence in a light most favorable to plaintiff, a reasonable inference can be drawn that these officers were personally involved by either participating in restraining Mr. Streeter on the ground in a face down position, or observed Mr. Streeter being restrained in a face down position during the incident and failing to intervene in this improper restraint.

**F.**     **Plaintiff's failure to intervene claim.**

Defendants' defense on the failure to intervene claim once again rests wholly upon their controverted claim that Mr. Streeter was resisting arrest and had to be taken down forcibly.  The defendants, citing to <u>Figueroa v. Mazza</u>, Docket No. 11-CV-3160, 2014 U.S.Dist. LEXIS 139212, at 14-15 (E.D.N.Y., Sept. 30, 2014), claim that, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  Defendants also state that, "Additionally, an officer who fails to intercede 'is immune from liability pursuant to the Doctrine of Qualified Immunity' provided that the failure was not objectively unreasonable."  (Citing to <u>Speights v. City of New York</u>, No. 98-CV-4635 (NG) (JMA), 2001 U.S.Dist. LEXIS 10433, 19 (E.D.N.Y., June 18, 2001).  Contrary to the defendants' assertion, the record herein totally supports the claim for failure to intervene.

"'It is widely recognized that all law enforcement officials have an affirmative duty to

24

intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.' Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). To establish a claim for excessive force under a failure to intervene theory, a plaintiff must prove that the officer (1) observed, or had reason to know of, the alleged violation, and (2) there was a realistic opportunity to intervene to prevent the harm from occurring. Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240, 2004 WL 2202564, at *9 (S.D.N.Y. Sept. 28, 2004). Whether 'an officer…was capable of preventing the harm from being caused by another officer is an issue of fact for the jury, unless considering all the evidence a reasonable jury could not possibly conclude otherwise.'" Crockett v. The City of New York, 11-CV-48378 (PKC) (E.D.N.Y. Sept. 29, 2015.)

For purposes of this motion, if one were to accept the testimony of Shirley Liverman, the use of excessive force was not in taking Mr. Streeter to the ground, but rather in forcibly pouncing upon him and causing the blunt impact injuries to him, causing asphyxiation by applying a knee to his neck and another to his back while forcing his shoulders down into the ground while in a face-down position when he was rear cuffed; in exerting such force upon an already subdued individual with force sufficient to break a tooth, cause a bloody nose, cause there to be dirt in his mouth and between his teeth and to permit the behavior of at least two colleagues to persist for thirty minutes during part of such time Mr. Streeter was heard to be gasping that he could not breathe and permitting Mr. Streeter to go into cardiac arrest for as much as twenty minutes. It was also completely unnecessary and therefore excessive to keep Mr. Streeter in a face down position for approximately thirty minutes under the circumstances. The testimony of Shirley Liverman establishes that the police officers were circled around Mr.

25

Streeter for most of the thirty-minute interaction such that they had a realistic opportunity to intervene to prevent the harm from occurring and to establish that their failure to intercede was objectively unreasonable.  All of the officers, at some point prior to the time before Mr. Streeter was turned over in cardiac arrest at 6:45 a.m., had an opportunity to intervene.  Even if it were a split-second decision for the two officers who jumped on Mr. Streeter and placed their knees on his neck and back as previously described, it is uncontroverted that he was held down while handcuffed for approximately thirty minutes, and the EMT's establish that he hadn't moved for at least two-thirds of that time, and EMT Anzalone specifically states that he could have been in cardiac arrest for all of that time.  It is clear that the failure to do anything for thirty minutes constitutes a failure to intervene if a jury could believe that the specific individuals who made contact with the plaintiff's decedent used unreasonable force or were otherwise deliberately indifferent to Mr. Streeter's safety and medical needs.  The concession by all of the individual officers that they were on the scene and either actively holding down Mr. Streeter or passively watching him for the duration of the encounter while they were on the scene, clearly establishes that all of the defendant police officers were either active participants or sufficiently close and had sufficient time to intervene to protect the constitutional rights of Mr. Streeter from infringement by their fellow officers.  See e.g., Defs.' 56.1 ¶¶ 145, 147, 153, 161, 162, 166, 166, 170-174, 184; Klein Decl. Ex. 7, Ip. Dep. at pp. 89-94; Klein Decl. Ex. 8, Ast Dep., at pp. 89, 99-108; Klein Decl. Ex. 9, Chen Dep., at pp. 70-73, 97-102; Klein Decl. Ex. 10, Amaty Dep., at pp. 87-88.

G.     **Plaintiff's supervisory liability claim.**

"An individual supervisor can be held liable, if the plaintiff establishes the 'defendant's

26

personal involvement in the alleged constitutional deprivation.'" <u>Carpenter v. City of New York</u>, 984 F. Supp. 2d 255, 268 (S.D.N.Y. 2013), (quoting <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 138 (2d Cir. 2013). "Examples of such personal involvement include directly participating in the infraction, and creating a policy or custom under which unconstitutional practices occurred, or allowing such a policy or custom to continue." Here, Sergeant Tao Chen, the patrol supervisor on the date of the incident, can be held liable in his supervisory capacity for his failure to intervene to prevent the use of excessive force and/or the deliberate indifference to Mr. Streeter's serious medical needs and safety. Just as any police officer who was on the scene, who observed force being used upon the plaintiff's decedent, can be liable for their indifference and failure to intervene, the same rationale applies to Sergeant Chen, who was in telephonic communication with the defendants on the scene prior to his arrival, and who then also arrived on the scene well before the arrival of ESU, yet made no attempt to stop the abuse of plaintiff's decedent, to sit him up, or to otherwise expedite his medical attention such that the ultimate injury, his violent death, would not have occurred.

H. <strong>Plaintiff's claim against the City for municipal liability.</strong>

"As the Supreme Court established in <u>Monell v. New York City Department of Social Services</u>, order to have recourse against a municipality or other local government under section 1983, plaintiffs 'must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury.'" <u>Davis v. City of New York</u>, 959 F. Supp. 2d 324, 337-38 (S.D.N.Y. 2013). Under some circumstances, such as are presented here, a failure to train can be the basis for liability under § 1983. <u>See</u> <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 387 (1989).

Plaintiff's <u>Monell</u> claim is set forth at length in the report of Police Chief Timothy

27

Longo.  <u>See</u> Lax Decl. to Defs.' Motion to Exclude Expert Testimony, Ex. 3.  Police Chief

Longo, who has over thirty-four years' experience in police practice and law enforcement,

currently serving as Chief of Police for the City of Charlottesville, Virginia, and formerly having

served as a police colonel and the Chief of the Baltimore City Police Department's Technical

Services Bureau, set forth his extensive education and training background in his expert report.

Police Chief Longo, in addition to his extensive occupational experience, has participated in

agency audits with respect to evaluation of policies, procedures and investigative protocols with

regard to use of force and use of force investigations for the Fort Lauderdale, Florida Police

Department, the Hartford, Connecticut Police Department, and the Belmont, Ohio Sheriff's

Office.  In addition, he has served as the Internal Affairs and Use of Force monitor with regard to

the Memorandum of Agreement by and between the Department of Justice and the City of

Cincinnati and the Cincinnati Police Department.  In addition, following his retirement from the

Baltimore City Police Department, he served as a consultant and project manager for a global

strategic management consulting firm, where his principle duties included managing a project

within the District of Columbia Police Department, performing audits of the Denver Police

Department's Internal Affairs Division, the Pasadena Police Department's Communications

Division, and the District of Columbia Police Department's Communications Division.  Police

Chief Longo is an attorney, having obtained his law degree from the University of Baltimore

School of Law, and he has served on the faculty of Towson University, instructing courses in

Police Administration and Conflicts in Policing.  He has guest lectured at the University of

Virginia and served on the faculty of the Institute for Law Enforcement Administration at the

Center for American and International Law in Plano, Texas, for approximately twenty years and

also the Center for the Constitution at Montpelier, for the last three to four years.  He is the co-author of the <u>Virginia Search and Seizure Manual for Law Enforcement Officers,</u> 5th Edition, published by the Lexis Nexis Company and the sole author of the 6th and 7th Editions.

Police Chief Longo, in performing his review of the facts and circumstances involved herein, determined that there was nothing to lead him to conclude that the relevant policies of the New York Police Department pertaining to the use of force and the handling of emotionally disturbed persons, on their face, are inconsistent with generally accepted policing practices or the laws governing such matters.  Instead, it was his opinion that a problem lies with the manner in which the policies and procedures are interpreted by the defendant police officers and a failure in training and education.

The New York City Police Department policy provides specific guidance with regard to dealing with emotionally disturbed persons:  "Whenever possible, members should make every effort to avoid tactics, such as sitting or standing on a subject's chest, which may result in chest compression, thereby reducing the subject's ability to breathe.  <u>See</u>, Klein Decl. Ex. 6, Patrol Guide 203-11, paragraph 6, NYC 398.  In addition:  "Persons should be rear cuffed at the earliest opportunity, . . . should be positioned as to promote free breathing," and "should not be maintained or transported in a face-down position."  <u>Id.</u>

Each of the defendant police officers deposed concedes that Mr. Streeter was maintained in a chest or belly-down position, but seeks to distinguish that from the policy guidelines prohibiting maintaining a detainee in a face-down position.  As previously set forth, there is a genuine factual dispute as to whether Mr. Streeter's face was actually in a down position or if, while belly-down, his face was positioned to the side.  It is the opinion of Police Chief Longo

29

that even if a jury were to adopt the defendant police officers' version, that Mr. Streeter's face

was on its side, cheek to ground, that such an interpretation is inconsistent with law enforcement

policies that have been implemented to guard against the possibility of positional or compression

asphyxia.  Police Chief Longo refers to the 1995 National Law Enforcement Technology Report,

which states in pertinent part that, "[a]s soon as the subject is handcuffed, get him off his

stomach.  Turn him on his side or place him in a seated position."  The report continues,"[i]f he

continues to struggle, do not sit on his back."  This technology report has been incorporated into

the policy of the New York City Police Department.

     It is clear from the deposition testimony of the police officers that the officers herein

uniformly interpreted the policy of the New York City Police Department in a manner that is

wholly inconsistent with generally accepted policing practices.  All of the police officers admit

that they kept Mr. Streeter lying on his stomach for a period of at least thirty minutes.

Additionally, as previously stated, the testimony of Shirley Liverman establishes that Mr.

Streeter was maintained face down with direct force applied to his neck and back by the

placement of two officers' knees thereon, a contraindication of sound police practices, and a fact

that is corroborated by the herniations evident in his neck and back found by the City's medical

examiner.  In Munger v. City of Glasgow, 227 F.3d 1082 (9th Cir. 2000), the court held that an

agency that fails to train officers for recurring tasks that police officers face, may be liable for

failing to train the officers when a lack of training or poor training foreseeably leads to a

constitutional violation.

     In the instant action, there is clearly a question of fact as to whether the police officers

obtained adequate training with regard to policy for dealing with an emotionally disturbed person

and also with regard to the manner in which a subdued detainee should be maintained.  In the instant action, fourteen individual police officers were on the scene and none of them determined that it was inappropriate to subdue Mr. Streeter in a face-down position.  The NYPD Police Patrol Guide specifically provides that as soon as a subject, specifically an emotionally disturbed person is taken into custody, he should be rear-cuffed at the earliest opportunity and should be positioned in a manner so as to promote free breathing and should not be maintained in a face-down position.  The Patrol Guide specifically informs officers to avoid tactics that may result in chest compression, thereby reducing the detainee's ability to breathe.  Maintaining Mr. Streeter in a face-down position was contrary to established NYPD procedures, but nevertheless Officer Spataro specifically indicated that his training set forth the exact opposite (Defendants' Rule 56.1 Statement, No. 242.)

Additionally, the systemic disregard of civilian complaints of excessive force and the failure of Internal Affairs to conduct adequate investigations into claims of excessive force breeds an environment of careless and reckless conduct on the part of police officers.  It is notable that almost all of the police officers involved in the incident with Mr. Streeter have multiple complaints against them, many of them relating to excessive force that caused significant injury, for which the defendant, City of New York, made monetary payments of damages.  Surprisingly, none of these officers appear to have been disciplined, giving the impression that the City does not care how they treat the public at large.  The cursory manner in which Internal Affairs handled the investigation of this incident, not bothering to segregate officers before interviewing them or even ordering them not to discuss the facts of the case before they were interviewed, is a clear indication that the City of New York is aware of a

31

pattern of conduct and tacitly condones it.

Police Chief Longo's finding and opinions in this regard have been substantiated by the New York City Department of Investigation Office of the Inspector General for the NYPD report, dated October 1, 2015, entitled Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices. Klein Decl., Ex. 14. The NYPD itself found, as stated in Police Chief Longo's report, that, "Historically, NYPD has frequently failed to discipline officers who use force without justification." Id. at p.2. The report further found that "NYPD's current use of force policy is vague and imprecise, providing little guidance to individual officers on what actions constitute force…NYPD's Patrol Guide does not properly instruct officers to de-escalate encounters with the public; NYPD training does not adequately focus on de-escalation, and NYPD frequently failed to impose discipline, even when provided with evidence of excessive force." Id. at pp.3-4. Plaintiff respectfully asks the Court to take judicial notice of the City's admissions in said governmental report, and to otherwise find that plaintiff's Monell claim should be tried before a jury.

II.   **Plaintiff's State Law Claims.**

Given that defendants' entire motion as to plaintiff's State Law claims likewise hinges upon the contested fact that Mr. Streeter was actively resisting an arrest, the defendants' motion must be denied.

A.   **Defendants' violation of New York State's wrongful death statute.**

As set forth previously, there is a clear question of fact as to whether the actions of the defendant officers caused Mr. Streeter's death. The autopsy report specifically lists the manner of death as cardiac arrest brought on by violent struggle. Also as stated previously, the testimony

32

of EMT Anzalone specifically raises a question of genuine material fact as to whether Mr. Streeter was dead or on the verge of death at the time that the police officers got off of him and turned him over. EMT Anzalone expressly testified that at the time that Mr. Streeter was turned over, he was in cardiac arrest and that he could have been so for at least twenty minutes.

Additionally, Dr. Lone Thanning, a physician and Medical Examiner, specifically opines that the actions of the police officers caused the death of Mr. Streeter. Among other findings, Dr. Thanning has concluded that that the physiological signs on Mr. Streeter's body support her determination as to cause of death. She noted that the right sterno-hyoid neck muscle hemorrhage injury requires hyperextension and/or rotation, twisting, and compression of the front of the neck near the midline. Additionally, she concluded that a diffuse purple contusion at the right back of his neck was a pressure mark, inappropriate in location for an arrest situation with handcuffing and leg and shoulder holding only. Also, she concluded that the thoracic intervertebral disc hemorrhage is consistent with a pressure injury indicating heavy weight pressure applied to Mr. Streeter's back while in a prone position. She further concluded that the multiple bilateral forehead, left nostril, and lower lip abrasions with extensive dirt contamination to the face and inside the mouth, as well as the newly chipped medial left upper incisor tooth indicated firm pressure while prone with face pointing into the ground. Additionally, in her supplemental report, she specifically stated that autopsy-documented neck bruises indicated hyperextension of the neck, further compressing Mr. Streeter's airway and contributing to his tragic and untimely demise.

Additionally, the expert report of police expert, Timothy J. Longo, Sr., establishes a claim that Mr. Streeter's death was caused by positional asphyxiation, which results from being

33

forcibly held down in a face-down position for an excessive period of time.

Finally, even if Mr. Streeter was alive at the time that the encounter with the police ended and he was already placed in the ambulance, that, in and of itself, does not preclude a finding that the force used upon Mr. Streeter and holding him face down on the ground face down while rear cuffed with officers on top of for approximately thirty minutes while he had a pre-existing hypertension situation, isn't an ultimate proximate cause of his death.

**B.    Plaintiff's State Law claims against the individual defendant officers.**

Defendants' argue that plaintiff's state law claims against the individual defendant officers should be dismissed to the extent that plaintiff's Notice of Claim did not assert the names of each of the individual defendants.  Plaintiff submits that this is not fatal to her claim insofar as there is a split in the law in this regard.  Plaintiff further submits that the Court should follow the precedent set forth by Scott v. City of New Rochelle, N.Y.S.2d 819 (Sup. Ct. 2014), which, in following Goodwin v. Pretorius, 105 A.D.3d 207 (Sup. Ct. 2013), held that "the test to determine whether a notice of claim complies with section 50–e of the General Municipal law is 'merely whether it includes information sufficient to enable the city to investigate,' not whether the plaintiff identifies, by name, the individuals who allegedly committed the wrongdoing."  In so doing, the Court must determine whether the plaintiff sufficiently described the incident to enable the City to investigate and determine which police officers were involved.  See Scott, N.Y.S.2d at 278.  Here, plaintiff submits that her Notice of Claim provided sufficient information for the City to investigate and determine which officers were involved, including the time, date, and a detailed description of the incident, a fact which borne out by the fact that the City did in fact identify the officers involved, all of whom are now defendants in the action.

34

Moreover defendants have failed to show any prejudice caused by this omission and thus "pursuant to General Municipal Law section 50-e (6), the Court has the discretion to disregard the omission in the absence of prejudice to the municipality." Id. at 830.

C.    **The assault and battery claims.**

As previously stated, the plaintiff does not refute that the defendants had a right to seize Mr. Streeter for purposes of transporting him to the hospital. The improper contact constituting the assault and battery of Mr. Streeter results from the claims of unnecessary force used upon him to subdue him, which force resulted in numerous physical injuries as set forth in the aforesaid autopsy report and in Dr. Thanning's findings. Even if a modicum of force was necessary to subdue Mr. Streeter, a fact that is denied and supported by the aforesaid testimony of Shirley Liverman, the plaintiff claims that the application of an officer's knee to the neck and another officer's knee to the back, as well as the forcing of his face into the ground such that he sustained a broken tooth and a bloody nose while he was rear cuffed, constitutes a wrongful and offensive touching under the circumstances. The defendants' citations regarding officers executing a lawful arrest are not relevant to the situation herein in that Mr. Streeter had committed no crime and there is no indication that he posed any threat to himself or others, including the police officers. Even the citation to New York's Mental Hygiene Law, Section 9.41, is inapplicable because in the absence of a clear indication that Mr. Streeter posed an immediate risk to anyone, the police officers pursuant to policy guidelines were to wait for ESU and not engage the emotionally disturbed person. Even if engaging Mr. Streeter and handcuffing him were permissible, as previously stated, the other actions of the police officers in the manner in which they continued to subdue him poses a question of fact as to whether there was an assault

35

and battery as any such contact would have been offensive and otherwise unjustified under the facts in the light most favorable to the plaintiff.

> ### D. Plaintiff's claim for intentional infliction of emotional distress.

Plaintiff withdraws this claim.

> ### E. Plaintiff's claims for negligence screening, hiring and retention and negligent training and supervision.

Defendants' defense to these claims is based upon case law which essentially finds that such claims are redundant and unnecessary if the employer is vicariously responsible for the actions of its employees. To the extent that defendant City of New York concedes that it is vicariously liable for the actions of the individual defendant officers, plaintiff would be willing to consider withdrawing her claims with regard to negligent training and supervision under New York State law, which should otherwise go to the jury as the evidence for such claims mirrors the evidence in support of plaintiff's Monell claims and are based in large part of the testimony of Police Chief Longo. This conditional withdrawal is not a concession to waiving any of plaintiff's claims against the City of New York for municipal liability under federal law.

> ### F. Plaintiff's claims of violation of New York State Constitution Article 1 §11.

Plaintiff withdraws her claim alleging denial of equal protection under the New York State Constitution Article 1 §11.

> ### G. Plaintiff's survival claim.

Even if a jury ultimately determined that Mr. Streeter's death was not caused by the actions of the police, Mr. Streeter's estate is still entitled to recover for personal injuries sustained as a result of the actions of the defendants. See Tilley v. Hudson River R.R., Co., 29

36

N.Y. 252 (1864); Gonzalez v. NYCHA, 77 NY2d 663 (1991).

Not to belabor the same point, but this claim, as well as all of the others addressed previously within this Memorandum of Law, rest upon a factual dispute as to whether the defendants employed unreasonable force and failed to seek timely medical attention for Mr. Streeter. The dispute as to genuine material issues of fact requires that the motion as to this claim also be denied.

H.     **The City of New York is not protected by governmental immunity.**

The standard for state governmental immunity is essentially the same as the qualified immunity under federal law. While it is true that the court will not second guess discretionary acts of governmental employees, an exception exists when a jury can conclude that there is no way that the officers could possibly have believed that their behavior under the circumstances was objectively reasonable. If a jury were to believe Shirley Liverman's account that Mr. Streeter was passively lying on the ground when the police officers pounced upon him and violently subdued him, and that he was held face down for thirty minutes while rear cuffed, sustaining the injuries set forth in the Medical Examiner's report and in Lone Thanning's findings, they could rationally conclude that no police officer facing those circumstances could have possibly thought that their actions were reasonable.

I.     **The exercise of supplemental jurisdiction over state law claims.**

As has been set forth in the within Memorandum of Law, there are clearly numerous genuine material questions of fact that require the denial of defendants' summary judgment motion seeking dismissal of plaintiff's federal law claims. Inasmuch as the court will continue to maintain jurisdiction over the federal claims, there is no reasonable rationale for refusing to also

37

exercise supplemental jurisdiction over the plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests that the court deny

defendants' motion for summary judgment in all respects and for such other and further relief as

the court deems appropriate.

Dated: New York, New York
      October 2, 2015

BRETT H. KLEIN, ESQ., PLLC
Attorneys for the Plaintiff
305 Broadway, Suite 600
New York, New York 10007
Tel.: (212) 335-0132

By: _____
     BRETT H. KLEIN (BK4744)

38